Kevin J. Stoops (*pro hac vice* forthcoming)
kstoops@sommerspc.com
Jason T. Thompson (*pro hac vice* forthcoming)
jjthompson@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

*Trial Counsel for Plaintiff and Proposed Class
and Collective Members*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| **DEBRA WOLF**, individually and on behalf of all other similarly situated individuals,<br><br>                    Plaintiff,<br><br>v.<br><br>**THE PERMANENTE MEDICAL GROUP, INC.**, a California corporation,<br><br>                    Defendant. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

        Plaintiff, Debra Wolf ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, The Permanente Medical Group, Inc. ("Defendant"), and states as follows:

## INTRODUCTION

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA," or 29 U.S.C. § 201 *et seq.*); California Labor Code 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198; California Industrial Welfare Commission Wage Order No. 4; California Business & Professions Code § 17200; and California Labor Code § 2698 *et seq.*

2.    Defendant offers call center services to its patients and employs Telephone Service Representatives (hereinafter "TSRs") to receive and respond to patient phone calls, among other duties.

3.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's TSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.

4.    One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

5.    More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.*  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

6.     Defendant employs TSRs in brick-and-mortar class center facilities located in Vallejo, San Jose, and Sacramento, California. Additionally, Defendant employs "Remote" TSRs who work most or all of their hours from their home residences.

7.    Defendant requires its TSRs to work a full-time schedule, plus overtime. However, Defendant does not compensate the TSRs for all work performed. Specifically, Defendant fails to pay

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

TSRs for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift. Defendant's illegal compensation practices and policies result in TSRs not being paid for all time worked, including overtime.

8.      Whether working remotely or in the brick-and-mortar call centers, Defendant requires TSRs to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the TSRs' work as they cannot perform their jobs effectively without them.

9.      Whether working remotely or in the brick-and-mortar call centers, Defendant's TSRs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

10.      Pursuant to Defendant's illegal compensation practices and policies, TSRs are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking into Defendant's timekeeping system; 2) perform computer, program and application shutdown and log-in tasks off-the-clock during their uncompensated meal periods; and 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping system. Additionally, Defendant fails to pay TSRs for time spent prior to each shift locating equipment (including chairs) and subsequent to each shift shredding and disposing of patient notes. Finally, Defendant fails to pay Remote TSRs for time spent driving to Defendant's brick-and-mortar locations on days that they experience technical issues with Defendant's computers, programs and applications.[1]

---

[1]  Under the Portal-to-Portal Act and 29 C.F.R. §§ 785.38, time spent traveling subsequent to commencement of an employee's workday or prior to the conclusion of the employee's workday (like thatfor example, travel done undertaken by Plaintiffs to their first scheduled "on-site" customer assignment and returning home from their last scheduled "on-site" customer assignment) is considered part of the employee's principal work activities, and thus, is compensable. Specifically, 29 C.F.R. § 785.38 (Travel that is all in the day's work), states as follows: "Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked...."

11.     The individuals Plaintiff seeks to represent in this action are current and former TSRs, who are similarly situated to herself in terms of having been subjected to Defendant's violations of federal and state law.

12.     Defendant knew or could have easily determined how long it takes for TSRs to complete the above described off-the-clock work, and Defendant could have properly compensated Plaintiff and the putative Class for this work, but did not.

13.     Plaintiff seeks a declaration that her rights, and the rights of the putative Class, were violated, an award of unpaid wages (including overtime), an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and award of attorneys' fees and costs to make herself and the putative Class whole for the damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

14.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

15.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

16.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's employees, including the Plaintiff in this case, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis.

17.     This Court has original jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which at least some members of the proposed classes have a different citizenship from Defendant.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

18.     The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

19.     The court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

20.     The court has personal jurisdiction over Defendant because Defendant is domiciled in the state of California, conducts business within the state of California, employs individuals within the state of California, and is registered with the California Department of the Secretary of State.

**VENUE**

21.     Venue is proper in the Northern District of California because Defendant employs TSRs in this district, and a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in the Northern District of California.

**INTRADISTRICT ASSIGNMENT**

22.     A substantial part of the events or omissions which give rise to the claims occurred in Alameda County, and therefore this action is properly assigned to the San Francisco/Oakland Division. N.D. Cal. Local Rule 3-2(c)-(d).

**PARTIES**

23.     Plaintiff, Debra Wolf, is a resident of Gilroy, California. She has been employed by Defendant as a TSR since May 21, 2001, and signed a consent form to join this collective action lawsuit, which is attached hereto as ***Exhibit A***.

24.     Additional individuals were or are employed by Defendant as TSRs during the past four years and their consent forms will also be filed in this case.

25.     Defendant, The Permanente Medical Group, Inc., is a California corporation headquartered in Oakland, California.  Defendant is licensed to do business in the State of California and

its registered agent for service of process in California is Kristin C. Chambers, 1950 Franklin St., 20th Floor, Oakland, California 94612.

26.     Upon information and belief, Defendant has employed over one thousand (1,000) TSRs in California over the last four years.

27.     Plaintiff is informed and believes, and alleges thereon, that Defendant is responsible for the circumstances alleged herein, and proximately caused Plaintiff and similarly situated TSRs to be subject to the fraudulent, unlawful, unfair, and deceptive acts and practices complained of herein.

28.     At all times herein mentioned, Defendant approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

29.     At all times herein mentioned, Defendant's acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## GENERAL ALLEGATIONS

30.     Plaintiff, Debra Wolf, is currently employed as a TSR for Defendant and has worked in that position since May 21, 2001. Wolf is compensated at a base rate of $28.95 per hour with a shift differential and typically works approximately 40 or more hours per week (and more than 8 hours per day). Wolf's typical schedule is Monday through Friday from 1:30 p.m. to 10:00 p.m. Wolf works from her home as a Remote TSR on Mondays, Tuesdays, Wednesdays and Fridays, and typically works at Defendant's brick-and-mortar call center in San Jose, California on Thursdays.

31.     Plaintiff and Defendant's TSRs are responsible for, among other things, responding to inbound telephone calls from patients of Defendant and its affiliated companies/medical groups; evaluating the patient's needs; directing access to care; and communicating with physicians.

32.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's TSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.

33.    One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

34.    More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.*  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

35.    Defendant employs TSRs in brick-and-mortar class center facilities located in Vallejo, San Jose, and Sacramento, California. Additionally, Defendant employs "Remote" TSRs who work most or all of their hours from their home residence.

36.    Defendant requires its TSRs to work a full-time schedule, plus overtime. However, Defendant does not compensate the TSRs for all work performed. Specifically, Defendant fails to pay TSRs for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift.  Defendant's illegal compensation practices and policies result in TSRs not being paid for all time worked, including overtime.

37.    Whether working remotely or in the brick-and-mortar call centers, Defendant requires the TSRs to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the TSRs' work as they cannot perform their jobs effectively without them.

38.    Whether working remotely or in the brick-and-mortar call centers, Defendant's TSRs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

39.    Pursuant to Defendant's illegal compensation practices and policies, TSRs are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking

into Defendant's timekeeping system; 2) perform computer, program and application shutdown and log-in tasks off-the-clock during their uncompensated meal periods; and 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping system. Additionally, Defendant fails to pay TSRs for time spent prior to each shift locating equipment (including chairs) and subsequent to each shift shredding and disposing of patient notes. Finally, Defendant fails to pay Remote TSRs for time spent driving to Defendant's brick-and-mortar locations on days that they experience technical issues with Defendant's computers, programs and applications; since TSRs commence their workdays by starting up and logging into various programs and applications, any time they spend driving *subsequent* to the commencement of their workdays to Defendant's brick-and-mortar locations constitutes compensable work time.[2]

### A.    Pre-Shift Off-the-Clock Work

40.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other TSRs are required to start up and log into various secure computer programs, software programs, and applications in order to access information. The pre-shift startup and login process takes substantial time on a daily basis with said time ranging from five (5) to ten (10) minutes per day, or even longer when technical issues arise.

41.    Before clocking in when working remotely, Plaintiff and each Remote TSR must undertake the following essential work tasks in chronological order:

- First, the TSRs must turn-on/warm-up their computer.

- Next, the TSRs are required to establish a connection to Defendant's virtual private network ("VPN").

[2] Under the Portal-to-Portal Act and 29 C.F.R. §§ 785.38, time spent traveling subsequent to commencement of an employee's workday or prior to conclusion of the employee's workday (for example, travel undertaken by Plaintiffs to their first scheduled "on-site" customer assignment and returning home from their last scheduled "on-site" customer assignment) is considered part of the employee's principal work activities, and thus, is compensable. Specifically, 29 C.F.R. § 785.38, states as follows: "Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked...."

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

- The TSRs are then required to start-up and log-in to the following programs/applications that are utilized during their shifts including, but not limited to: Skype; Intradiem; Notes; CCMD List; eSchedule planner; Stargate/KPATHS,[3] Sessions, Web-Wiz.

- Finally, the TSRs start-up and log-in to Defendant's timekeeping system "TIME" at which time they begin getting paid.

42.    Before clocking in when working in Defendant's brick-and-mortar call center locations, Plaintiff and each TSR must undertake the following essential work tasks in chronological order:

- First, the TSRs must locate necessary equipment including chairs.

- Next, the TSRs must turn-on/warm-up their computer.

- The TSRs are then required to start-up and log-in to the following programs/applications that are utilized during their shifts including, but not limited to: Intradiem; Notes; CCMD List; eSchedule planner; Stargate/KPATHS, Sessions, Web-Wiz.

- Finally, the TSRs start-up and log-in to Defendant's timekeeping system "TIME" at which time they begin getting paid.

43.    Defendant's TSRs complete the above steps before being clocked-in and paid each shift; meaning that they are performing off-the-clock work in a range of no less than five (5) to ten (10) minutes per shift without compensation.

44.    Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiff and its other TSRs for no less than five (5) to ten (10) minutes per day of work performed in connection with their pre-shift startup and login activities.

45.    The unpaid off-the-clock work performed prior to each shift by Plaintiff and other TSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as TSRs.

### B.    Meal Period Off-the-Clock Work

46.    Defendant provides Plaintiff and the TSRs with one unpaid meal period per shift.

---

[3] In late 2016, Defendant replaced the Stargate program with KPATHS.

47.    In order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be _completely relieved_ from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

48.    However, Defendant does not provide Plaintiff and the TSRs with a legitimate bona fide meal period.

49.    Defendant fails to provide a bona fide unpaid meal period because it requires Plaintiff and the TSRs to return to their work stations prior to the end of their meal periods and then to spend off-the-clock time logging back into the necessary computer/software programs and applications needed to begin taking calls promptly at the end of their scheduled meal periods.

50.    The work performed by Plaintiff and Defendant's TSRs during their unpaid meal periods takes substantial time on a daily basis with said time ranging from three (3) to five (5) minutes per day, or more.

**C.    Post-Shift Off-the-Clock Work**

51.    Pursuant to Defendant's policies, training and direction, Plaintiff and all other TSRs are required to shut down and logout of certain computer programs and applications they used during their shift _after_ they log-out of Defendant's timekeeping system.  The post-shift logout and shutdown process takes substantial time on a daily basis with said time ranging from five (5) to eight (8) minutes per shift, but can take substantially longer if the TSR experiences technical problems with the computer/software/applications or is required to perform program or system updates.

52.     Pursuant to Defendant's policies, training and direction, a substantial portion, if not all, of the shutdown and log-out process occurs after Plaintiff and the TSRs' shifts end and after they clock out of Defendant's timekeeping system.

53.     Additionally, Defendant fails to pay Plaintiff and TSRs for time spent subsequent to each shift shredding and disposing of patient notes.

54.     Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiff and its other TSRs for no less than five (5) to eight (8) minutes per day of work performed in connection with their end of shift shutdown and log-out activities.

55.     The unpaid off-the-clock work performed subsequent to each shift by Plaintiff and other TSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as TSRs.

**D.      Exemplary Pay-Period to Illustrate Pre- and Post-Shift Compensation Deficiencies**

56.     An example of a specific workweek where Defendant failed to pay Plaintiff all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

**Pay Period of 10/4/15 to 10/17/15**

- Plaintiff worked 80.11 hours and was paid at a base hourly rate (before shift differential) of $28.11 per hour for 80 hours and $42.10 per hour (before shift differential) for .10 hours.

- With pre-shift time of 5-10 minutes per shift, meal-period time of 3-5 minutes per shift, and post-shift time of 5-8 minutes per shift, Plaintiff should have been paid no less than an additional 130 to 230 minutes at her overtime rate of $42.10 during the pay period (plus applicable shift differential pay).

***Exhibit B***, Wolf Pay Stub.

///

///

///

**E.    Defendant Benefitted from the Uncompensated Off-the-Clock Work**

57.    At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiff and similarly situated employees in connection with the above described pre-shift, meal period and post-shift activities performed by Plaintiffs and other TSRs.

58.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiff and other TSRs.

59.    At all relevant times, Defendant was able to track the amount of time Plaintiff and the other TSRs spent in connection with the pre-shift, meal period and post-shift activities. However, Defendant failed to do so and failed to compensate Plaintiff and other TSRs for the off-the-clock work they performed.

60.    At all relevant times, Plaintiff and the TSRs were non-exempt hourly employees, subject to the requirements of the FLSA and the California Labor Code.

61.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the TSRs in order to pressure them into performing the pre-shift, meal period and post-shift off-the-clock work.

62.    Defendant expressly trained and instructed Plaintiff and its other TSRs to perform the above-described pre-shift activities before clocking into Defendant's timekeeping system and their shift's scheduled start time to ensure they were prepared to take calls at the moment their shifts began.

63.    At all relevant times, Defendant's policies and practices deprived Plaintiff and the TSRs of wages owed for the pre-shift, meal period and post-shift activities they performed. Because Defendants' TSRs typically worked forty (40) hours or more in a workweek and/or eight (8) hours or more in a workday, Defendant's policies and practices also deprived them of overtime pay.

64.     Defendant knew or should have known that the time spent by Plaintiff and other TSRs in connection with the pre-shift, meal period and post-shift activities was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

65.     Despite knowing Plaintiff and other TSRs performed work before and after their scheduled shifts and during their meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

**F.      Defendant Changes its Compensation Policies Effective May 25, 2017**

66.     On or about May 9, 2017, Defendant issued a communication to its workforce, including, its TSRs, indicating that it was modifying its beginning of shift, meal period, and end of shift clock-in and clock-out procedures. *Exhibit C*, "Changes in Logging in to TIME" communication directed to Defendant's TSRs.

67.     Specifically, Defendant communicated a policy change effective May 25, 2017 that would require its brick-and-mortar call center employees to utilize newly installed "landline telephones" in connection with clocking into and out of the TIME timekeeping system. Pursuant to the communication, the employees would no longer be required to access the TIME timekeeping system through Defendant's KPATHS (previously Stargate) computer program and, as a result, would no longer be required to perform computer, program and application, start-up/log-in and shut-down/log-out functions off-the-clock.

68.     The policy change did not affect Defendant's Remote TSRs, who were still required to perform computer, program and application, start-up/log-in and shut-down/log-out functions off-the-clock before and after May 25, 2017.

69.     The policy change purports to cure violations caused by the brick-and-mortar pay policies, but discovery will be needed to determine if all off-the-clock work performed by TSRs is now being compensated in compliance with the law.

70.     Upon information and belief, Defendant modified its illegal compensation policies and clock-in/clock-out procedures to remedy wide spread off-the-clock work abuses taking place in its San Jose, Vallejo and Sacramento, California call centers as brought to light by a group of Advice Nurses in a similar case filed in this District: *Brown v. The Permanente Medical Group, Inc.*, U.S.D.C. Northern District of California, Case No. 3:16-cv-05272-VC.

### G.     Defendant Fails to Pay Remote TSRs for Drive Time

71.     In addition to the above illegal compensation policies and practices, Defendant maintains an illegal compensation policy pursuant to which it fails to pay Remote TSRs for time spent driving to its brick-and-mortar locations on days when they experience technical issues with Defendant's computers, programs and applications, during their shifts and the technical issues preclude them from completing their shifts remotely from their residences.

72.     Pursuant to FLSA, the Portal-to-Portal Act, and state common law, Defendant is obligated to compensate Remote TSRs for the time they spent working off-the-clock, including their drive time subsequent to commencement of their workday, and is obligated to pay the compensation in the form of overtime at a rate of one and one-half times the employee's regular hourly rate.

73.     In *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), the Supreme Court relied on the definition of "workday" from the Portal-to-Portal Act to determine when time was compensable.  Citing to 29 C.F.R. § 790.6(b), the *Alvarez* Court held that "during a continuous workday," the time between when an initial principal activity is undertaken and completion of the concluding principal activity falls outside of the Portal-to-Portal Act's limitations on compensable activity, and thus is compensable under the FLSA.  *Id.*

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

at 37.

74.     As described above, Plaintiff and the Remote TSRs begin their workdays when they turn-on/warm-up their computers, which is the initial principal activity they perform each shift. They then continue to engage in work activities as they progress through the pre-shift startup and login process, including establishing a VPN connection and starting-up and logging-into the various programs and applications needed during their shifts.

75.     Any work Plaintiff and the Remote TSRs perform after their initial principal activity, including driving to Defendant's brick-and-mortar locations when experiencing technical issues, is compensable as a matter of law.

76.     Instead of paying overtime wages for the time worked in excess of 40 hours, Defendant failed to comply with the overtime provisions of the FLSA (as well as the Portal-to-Portal Act and state common law) and, in fact, failed to pay Plaintiff and the Remote TSRs for their off-the-clock work.

77.     Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiff and its other TSRs for work performed in connection with driving to its brick-and-mortar locations on days when they experience technical issues with Defendant's computers, programs and applications, during their shifts and the technical issues preclude them from completing their shift remotely from their residence.

## FLSA COLLECTIVE ACTION ALLEGATIONS

78.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All similarly situated current and former hourly Telephone Service Representatives who work or have worked for Defendant at any time from August 14, 2014 through judgment.*

(hereinafter referred to as the "FLSA Collective").   Plaintiff reserves the right to amend this definition if necessary.

79.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated TSRs.

80.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

81.     Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

82.     All of the work that Plaintiff and the members of the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiff and the FLSA Collective have performed.

83.     As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective.   This policy and pattern or practice includes, but is not limited to:

   a.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours that they worked in excess of 40 hours per workweek;

   b.  Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendant.

84.     Defendant is aware or should have been aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

85.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

16

86.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

87.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal-period time, and the amount of post-shift log-out/shut-down time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

88.    There are many similarly situated current and former TSRs who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

89.    This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

90.    Those similarly situated employees are known to Defendant, are readily identifiable and can be located through Defendant's records.

91.    Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include several hundreds, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## **RULE 23 CLASS ACTION ALLEGATIONS**

92.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on

behalf of all similarly situated current and former employees of Defendant who are or were employed to provide services to its clients at any time in the last four years.  Plaintiff proposes the following class definition:

> ***All current and former hourly Telephone Service Representatives who work or have worked for Defendant at any time from August 14, 2013 through judgment.***

Plaintiff reserves the right to amend the putative class definition if necessary.

93.    Plaintiff shares the same interests as the putative class and will be entitled under the California Labor Code to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to her under nearly identical factual and legal standards as the remainder of the putative class.

94.    The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendant employed hundreds, if not thousands, of TSRs throughout California. The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

95.    The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendant engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class.  Individual questions that Plaintiff's claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

    a.    Whether Defendant engaged in a policy or practice of failing to pay each Class member regular wages for each non-overtime hour worked.

    b.    Whether Defendant engaged in a policy or practice of failing to pay each Class member overtime compensation for each overtime hour worked;

c. Whether Defendant violated Labor Code sections 221 and 223 by making unlawful deductions to Class members' wages;

d. Whether Defendant failed to provide each Class member with at least one 30-minute meal period on every workday of at least 5 hours and a second 30-minute meal period on every workday of at least 10 hours as required by the California Employment Law and Regulations;

e. Whether Defendant violated section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Class member and the corresponding hourly rate;

f. Whether Defendant violated section 1174 of the Labor Code by failing to maintain accurate records of hours worked and wages paid to Class members;

g. Whether Defendant was unjustly enriched by the work and services performed by Class members without compensation;

h. Whether Defendant engaged in unfair business practices in violation of Business and Professions Code section 17200 *et seq.*; and

i. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law.

96. The status of all individuals similarly situated to Plaintiff raises an identical legal question: whether Defendant's TSRs are entitled to back wages, including overtime.

97. The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative Class members were all employed by Defendant and performed their job duties without receiving wages, including overtime wages, owed for that work.

98. The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative Class members, and because Plaintiff's attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiff and the putative Class members.

99. The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

100.    The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

101.    Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or even thousands of identical actions.  Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources.  Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

## COUNT I
## VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq.*
## FAILURE TO PAY OVERTIME WAGES

102.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

103.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

104.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

105.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

106.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the

production of goods for commerce.

107.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

108.    At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform no less than thirteen (13) and as much as twenty-three (23) minutes (or more during shifts when they experienced technical problems) of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

109.    The off-the-clock work performed every shift by Plaintiff and the FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

110.    In workweeks where Plaintiff other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including the shift differential where applicable.  29 U.S.C. § 207.

111.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for the TSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

112.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 510, 1194, 1197.1, 1198**
**AND IWC WAGE ORDER 4 – FAILURE TO PAY OVERTIME WAGES**

113.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

114.   At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially overtime compensation.

115.   At all relevant times, Plaintiff and the Rule 23 California Class regularly performed non-exempt work and were thus subject to the overtime requirements of California law.

116.   California Labor Code §§ 223, 510, 1194, 1197.1 1198 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K) provide that; (a) employees must be paid no less than the applicable minimum wage for all hours worked; (b) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours in a workday up to twelve (12) hours in a workday, in excess of forty (40) hours in a workweek, and for the first eight (8) hours of work on the seventh (7th) consecutive day or a workweek; and (c) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve (12) hours in a workday, and in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

117.   At all relevant times, Plaintiff and the Rule 23 California Class regularly worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

118.   At all relevant times, Defendant failed and refused to pay Plaintiff and the Rule 23 California Class members for any and all hours actually worked in excess of the scheduled shift.

119.   Defendant intentionally, maliciously, fraudulently and with the intent to deprive the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly

implemented a scheme or artifice to avoid paying overtime by reducing the rate of pay to Plaintiffs and other Rule 23 California Class members who worked overtime hours.

120.    Plaintiff and the Rule 23 California Class were entitled to receive overtime compensation at their lawful regular rate of pay, including any shift differential where applicable. Defendant's failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 223, 510, 1194, 1197.1, 1198, and IWC Wage Order No. 4.

121.    Wherefore, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's, failure to pay for all time worked and such premium compensation, as is required under California law.

**COUNT III**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 1194, 1197, 1197.1**
**AND IWC WAGE ORDER 4 – FAILURE TO PAY MINIMUM WAGES AND REGULAR**
**WAGES FOR ALL HOURS WORKED**

122.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

123.    At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, including minimum wage and regular wages for all hours worked.

124.    California Labor Code §§ 223, 1194, 1197, 1197.1 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K), 4(B), provide that employees must be paid no less than the applicable minimum wage for all hours worked. *See also Armenta v. Osmose, Inc*., 135 Cal. App. 4th 314, 323 (2005) (indicating that California's Labor Code requires payment for all hours worked at the employee's regular rate of pay).

125.    At all relevant times, Defendant failed and refused to pay Plaintiff and the Rule 23

California Class members minimum wage and regular wages for all hours worked including the off-clock-work alleged in this Complaint.

126.    Defendant intentionally, maliciously, fraudulently and with the intent to deprive Plaintiff and the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying Plaintiff and other Rule 23 California Class members minimum wage and regular wages for all hours worked.

127.    Plaintiff and the Rule 23 California Class were entitled to receive wages at their lawful regular rate of pay, including any shift differential where applicable, for all hours worked including the off-the-clock work alleged in this Complaint. Defendant's failure to pay such wages, as alleged above, was a willful violation of California Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order No. 4 §§ 2(K), 4(B)

128.    Wherefore, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked at their lawful regular rate of pay, including any shift differential where applicable, and including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's, failure to pay for all time worked as is required under California law.

### COUNT IV
### VIOLATION OF CALIFORNIA LABOR CODE §§ 221 AND 223
### UNLAWFUL DEDUCTIONS

129.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

130.    At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation, minimum wage and regular wages for all hours worked.

131.    Defendant made deductions from Plaintiff's and the Rule 23 California Class members'

paychecks in the amount of the overtime premiums, minimum wage and regular wages earned by the employees during the pay period so as to avoid paying overtime compensation, minimum wage and regular wages.

132.    California Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

133.    Labor Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract. Labor Code section 225 further provides that the violation of any provision of Labor Code §§ 221 and 223 is a misdemeanor.

134.    As a result of the conduct alleged above, Defendant has unlawfully collected or received from Plaintiff and the Rule 23 California Class part of the wages paid to their employees.

135.    Wherefore, Plaintiff demands the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 225.5 and 1194.

## COUNT V
## VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7, 512 AND AND IWC WAGE ORDER 4 – FAILURE TO PROVIDE MEAL BREAKS

136.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

137.    California Labor Code §§ 226.7, 512, and Industrial Welfare Commission ("IWC") Wage Order No. 4 § §11(A) and (B) provide that an employer may not employ a person for a work period of more than five (5) hours without providing the employee with a meal period of not less than thirty (30) minutes, and may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than (30) minutes.

138.    At all relevant times, Plaintiff and the Rule 23 California Class consistently worked in excess of five (5) or ten (10) hours in a day.

139.    At all relevant times, Defendant regularly required employees to perform work during their first and/or second meal periods without proper compensation. Defendant's practice of requiring employees to perform work during their legally mandated meal periods without premium compensation

is a violation of Labor Code §§ 226.7 and 512, and IWC Wage Order No. 4 § §11(A) and (B).

140.    Defendant purposefully elected not to provide meal periods to Plaintiff and the Rule 23 California Class members, and Defendant acted willfully, oppressively, and in conscious disregard of the rights of Plaintiff and the Rule 23 California Class members in failing to do so.

141.    Plaintiff is informed and believes Defendant did not properly maintain records pertaining to when Plaintiff and the Rule 23 California Class members began and ended each meal period, in violation of Labor Code §1174 and IWC Wage Order No. 4 § §11(A) and (B).

142.    As a result of Defendant's knowing, willful, and intentional failure to provide meal breaks, Plaintiff and the Rule 23 California Class members are entitled to recover one (1) additional hour of pay at the employee's regular rate of pay for each work day that a meal period was not provided, pursuant to California Labor Code § 226.7 and IWC Wage Order No. 7 § 11(D), and penalties, reasonable attorneys' fees, and costs pursuant to California Labor Code §§ 218.5.

143.    Defendant's wrongful and illegal conduct in failing to provide Plaintiff and the Rule 23 California Class members with meal breaks or to provide premium compensation, unless and until enjoined by order of this Court, will continue to cause great and irreparable injury to Plaintiff and the Rule 23 California Class members in that Defendant will continue to violate these laws unless specifically ordered to comply with the same. The expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are already entitled. Plaintiffs and the Rule 23 California Class members have no other adequate remedy at law to insure future compliance with the laws alleged herein to have been violated.

144.    Wherefore, Plaintiff demands pursuant to Labor Code Section 226.7(b) that Defendant pay each Rule 23 California Class member one additional hour of pay at the Rule 23 California Class member's regular rate of compensation for each work day that the meal period was not provided.

### COUNT VI
### VIOLATION OF CALIFORNIA LABOR CODE § 226
### FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

145.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

146.    California Labor Code § 226 provides that every employer shall, semi-monthly or at the

time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing gross wages earned, total hours worked, and the applicable hourly rates and corresponding number of hours worked. California Labor Code § 1174(d) and California Wage Order 4-2001 § 7(A) likewise require employers to maintain records of hours worked daily and wages paid to employees.

147.    At all relevant times, Defendant failed to furnish Plaintiff and the Rule 23 California Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of California Labor Code § 226.

148.    At all relevant times, Defendant also failed to maintain accurate records of hours worked daily and wages paid to employees as required by California Labor Code § 1174(d) and California Wage Order 4-2001 § 7(A).

149.    Plaintiff is informed and believes that Defendant knew or should have known that Plaintiff and the Rule 23 California Class members were entitled to receive wage statements compliant with California Labor Code § 226, and that Defendant willfully and intentionally failed to provide Plaintiff and the Rule 23 California Class members with such accurate, itemized statements.

150.    Wherefore Plaintiff demands that Defendant pay each and every Rule 23 California Class member fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100.00) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00) pursuant to California Labor Code § 226, as well as reasonable attorneys' fees and costs.

## COUNT VII
## VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq*.

151.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

152.    Defendant engaged and continues to engage in unfair business practices in California by practicing, employing and utilizing the unlawful practices described above, including (a) training and directing Plaintiff and the Rule 23 California Class to work off-the-clock without compensation; (b) making deductions to Plaintiff's and the Rule 23 California Class members' paychecks to recover overtime premiums, minimum wage and regular wages earned by the employee; (c) requiring Plaintiff

and the Rule 23 California Class to work overtime without lawful premium compensation; (d) failing to provide lawful meal breaks or premium compensation in lieu thereof; and (e) failing to provide accurate, itemized wage statements.

153.   In addition, the conduct alleged in each of the previously stated causes of action constitute an unlawful and for unfair business practice within the meaning of Business & Professions Code § 17200, *et seq.*

154.   As a result of Defendant's conduct, Plaintiff and the Rule 23 California Class have been harmed as described in the allegations set forth above.

155.   The actions described above, constitute false, unfair, fraudulent and deceptive business practices within the meaning of California Business & Professions Code § 17200, *el seq.* By and through such unfair, unlawful and/or fraudulent business practices, Defendant has obtained valuable property, money and services from Plaintiff and the Rule 23 California Class, and has deprived Plaintiff and the Rule 23 California Class fundamental rights and privileges guaranteed to all employees under California law.

156.   Defendant has been unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendant over other businesses providing similar services which routinely comply with the requirements of California law.

157.   Plaintiff seeks, on her own behalf, and on behalf of the putative Rule 23 California Class members, full restitution of all monies withheld, acquired and/or converted by Defendant by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendant by means of the acts and practices described herein.

158.   Plaintiff seeks, on her own behalf, and on behalf of other Rule 23 California Class members similarly situated, an injunction to prohibit Defendant from continuing to engage in the unfair business practices complained of herein. Defendant's unlawful conduct, as described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff and all Rule 23 California Class members in that the Defendant will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which

they are entitled under California law. Plaintiff and the Rule 23 California Class have no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

### COUNT VIII
### PRIVATE ATTORNEY GENERAL ACT ("PAGA")
### VIOLATION OF CALIFORNIA LABOR CODE § 2698, *et seq.*

159.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

160.   Plaintiff is an "aggrieved employee" under PAGA, as she has been employed by Defendant during the applicable statutory period and suffered one or more of the Labor Code violations herein.  As such, Plaintiff seeks to recover, on behalf of herself and all other current and former aggrieved employees of Defendant ("PAGA Group"), the civil penalties provided by PAGA, plus reasonable attorneys' fees and costs.

161.    Plaintiff seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).  Therefore, class certification of the PAGA claims is not required, but Plaintiff may choose to seek certification of the PAGA claims.

162.    Plaintiff seeks to pursue remedies pursuant to PAGA for the following violations.

a. Failure to Pay Overtime: Defendant unlawfully failed to pay Plaintiff Wolf and the PAGA Group overtime compensation in violation of Cal. Labor Code §§ 223, 510, 1194, 1197.1, 1198 and California Wage Order No. 4-2001.

b. Failure to Pay Minimum Wages and Regular Wages: Defendant unlawfully failed to pay Plaintiff Wolf and the PAGA Group minimum wage and regular wage compensation in violation of Cal. Labor Code §§ 223, 1194, 1197, 1197.1 and California Wage Order No. 4-2001.

c. Payment of Wages Below Designated Rate and Taking of Unlawful Deductions: Defendant unlawfully paid Plaintiff Wolf and the PAGA Group at below the designated rate in violation of

California Wage Order No. 4-2001 and Cal. Labor Code §§ 221 and 223, as detailed herein.

d. Failure to Provide Meal Breaks: Defendant unlawfully failed to provide Plantiff Wolf and the PAGA Group meal breaks as required by Cal. Labor Code 226.7, 512, and California Wage Order No. 4-2001.

e. Failure to Provide Complete and Accurate Wage Statements:   Defendant failed to provide complete and accurate wage statements containing all wages due to Plaintiff Wolf and the PAGA Group, in violation of California Wage Order No. 4-2001 and Cal. Labor Code § 226(a), as detailed herein.

f. Failure to Keep Accurate Payroll Records:  Defendant failed to provide complete and accurate wage statements regarding all wages due to Plaintiff Wolf and the PAGA Group, in violation of California Wage Order No. 4-2001 and Cal. Labor Code § 1174 et seq., as detailed herein.

163.   California Labor Code § 2698, *et seq*. imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for the initial violation of Labor Code §§ 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, and 1198, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

164.   Plaintiff has taken steps to ensure full compliance with the procedural requirements specified in California Labor Code 2699.3 as to each of the alleged violations.   On July 21, 2017, Plaintiff provided notice to the LWDA and the employer of Plaintiff's claims based on the alleged Labor Code violations, including the facts and theories supporting these claims.

165.  Enforcement of statutory provisions to protect workers and to ensure proper and prompt payment of wages is a fundamental public interest.  Plaintiff's successful enforcement of important rights affecting the public interest will confer a significant benefit upon the general public. Private enforcement of these rights is necessary, as no public agency has pursued enforcement.  Plaintiff is

incurring a financial burden in pursuing this action, and it would be against the interest of justice to require the payment of attorneys' fees and costs from any recovery obtained, pursuant to, *inter alia*, California Labor Code § 2699.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Debra Wolf, on her own behalf and on the behalf of the putative Collective and Rule 23 California Class members, requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b. Designating Plaintiff as Representative of the proposed FLSA Collective;

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated to Plaintiff, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under the FLSA;

d. Certifying the proposed Rule 23 California Class;

e. Designating Plaintiff as Representative of the proposed Rule 23 California Class;

f. Awarding a service award to the Class Representative in recognition of the time, effort, and risk she incurred in bringing this action and as compensation for the value she has provided to the Class members;

g. Appointing Outten & Golden LLP and Sommers Schwartz, P.C. as Class Counsel;

h. Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, California Labor Code, and UCL;

i. Declaring that Defendant willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

j. Granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiff worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years;

k. Awarding liquidated damages in an amount equal to the amount of unpaid overtime

wages found due and owing;

l.     Granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid minimum wages and regular wages calculated at Plaintiff's regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiff worked for the past four years;

m.     Awarding liquidated damages in an amount equal to the amount of unpaid minimum wages and regular wages found due and owing;

n.     For statutory and civil penalties pursuant to Labor Code §§ 225.5, 226(e), 226.3, 226.7, and 2699;

o.     For disgorgement and restitution to Plaintiff and other similarly affected Class members of all funds unlawfully acquired by Defendant by means of any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200 *et seq.*;

p.     For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendant and determined to have been wrongfully acquired by Defendant as a result of violations of California Business and Professions Code § 17200, *et seq.*;

q.     For an injunction prohibiting Defendant from engaging in the unfair business practices complained of herein;

r.     For an injunction requiring Defendant to give notice to persons to whom restitution is owing of the means by which to file for restitution;

s.     For actual damages or statutory penalties according to proof as set forth in California Labor Code §§ 226, 1174, and IWC Wage Order No. 7, § 7(A) related to wage statements and record keeping;

t.     For an order requiring Defendant to show cause, if any there be, why they should not be enjoined and ordered to comply with the applicable California Industrial Welfare Commission wage orders related to record keeping for Defendant's employees related to same; and for an order enjoining and restraining Defendant and their agents, servants and employees related thereto;

u.     For pre-judgment interest as allowed by California Labor Code §§ 218.6, 1194, and California Civil Code § 3287 and other statutes;

v.     Awarding civil penalties for violations of California Labor Code §§ 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, pursuant to California Labor Code § 2698, *et seq.*;

w.     For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, 29 U.S.C. 216(b), California Labor Code §§ 218.5, 226(e) and (h), 1194, and 2699, and California

Code of Civil Procedure § 1021.5; and

x.    For such other and further relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff, Debra Wolf, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.


Respectfully Submitted,

Dated: September 14, 2017            Kevin J. Stoops

By:___/s/ *Kevin J. Stoops*_____
    Kevin J. Stoops

    Kevin J. Stoops (*pro hac vice* forthcoming)
    kstoops@sommerspc.com
    Jason T. Thompson (*pro hac vice* forthcoming)
    jthompson@sommerspc.com
    SOMMERS SCHWARTZ, P.C.
    One Towne Square, Suite 1700
    Southfield, Michigan 48076
    Telephone: (248) 355-0300
    Facsimile: (248) 436-8453

    Jahan C. Sagafi (Cal. Bar No. 224887)
    jsagafi@outtengolden.com
    OUTTEN & GOLDEN LLP
    One Embarcadero Center, 38th Floor
    San Francisco, California 94111
    Telephone: (415) 638-8800
    Facsimile: (415) 638-8810

    *Trial Counsel for Plaintiff and Proposed Class
    and Collective Members*