JAHAN C. SAGAFI (Cal. State Bar No. 224887)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com

KEVIN J. STOOPS (admitted *pro hac vice*)
JASON J. THOMPSON (admitted *pro hac vice*)
CHARLES R. ASH, IV (admitted *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453
jthompson@sommerspc.com
kstoops@sommerspc.com
crash@sommerspc.com

Attorneys for Plaintiffs and Proposed Class and Collective Members

JEFFREY D. WOHL (Cal. State Bar No. 096838)
CAITLIN M. WANG (Cal. State Bar No. 311901)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
caitlinmarianwang@paulhastings.com

Attorneys for Defendant
The Permanente Medical Group, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA WOLF, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>THE PERMANENTE MEDICAL GROUP, INC., a California corporation,<br><br>Defendant. | No. 3:17-cv-05345-VC<br><br>**NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE/CLASS ACTION SETTLEMENT**<br><br>Date: September 6, 2018<br>Time: 10:00 a.m.<br>Courtroom: 4<br>450 Golden Gate Avenue, 17th Floor<br>San Francisco, California 94102<br>Judge: Hon. Vince Chhabria |

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................................ ii
NOTICE OF JOINT MOTION AND JOINT MOTION ................................................................. 1
MEMORANDUM IN SUPPORT OF JOINT MOTION ................................................................ 1
I.    INTRODUCTION .................................................................................................................. 1
II.   BACKGROUND .................................................................................................................... 2
       A.    The Litigation ................................................................................................................ 2
       B.    Preliminary Approval of the Settlement .................................................................... 3
       C.    The Settlement Class .................................................................................................. 3
       D.    The Settlement ............................................................................................................ 4
       E.    Notice Process ............................................................................................................ 4
III.  ARGUMENT .......................................................................................................................... 5
       A.    The Best Practicable Notice of Settlement Has Been Provided to the Class. ....... 5
       B.    Final Approval Standards Under Rule 23 and the FLSA. ..................................... 6
       C.    The Settlement Is Presumptively Fair Because of No Objections by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arms-Length Negotiations. .............................................................................................................. 7
            1.    No Objections and Only 9 Requests for Exclusion ..................................... 8
            2.    The Parties Engaged in Substantial Investigation and Analysis of the Legal Issues. ............................................................................................... 8
            3.    The Recommendations of Experienced Counsel Favor Approval of the Settlement. ..................................................................................................... 9
            4.    The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator. ..................................................................... 9
       D.    The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation. ................................................................. 10
            1.    The Value of the Settlement Favors Final Approval. ................................ 10
            2.    Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members. ........................................................................................... 10
       E.    The Court Should Grant Final Class Certification and Collective Action Designation. ... 11
IV.  CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) .................................................................................... 6, 9

*Brown et al., v. The Permanente Medical Group, Inc.*,
  U.S.D.C., N.D. Cal., No. 3:16-cv-05272-VC ............................................................ 1, 3, 4, 10

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................................................................................... 8

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................................................... 10

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................................ 1, 6

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................................................................... 5

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ................................................................................................ 7, 9

*Greko v. Diesel U.S.A., Inc.*,
  2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ........................................................................ 11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................................ 9, 10

*Hughes v. Microsoft Corp.*,
  No. 98 Civ. 1646, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ..................... 9

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (8th Cir. 2000) .................................................................................................... 8

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................................................ 10

*Lynn's Food Stores, Inc. v. U.S.*,
  679 F.2d 1350 (11th Cir. 1982) ................................................................................................ 6

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
  671 F. Supp. 819 (D. Mass. 1987) ............................................................................................ 7

*Mandujano v. Basic Vegetable Prods. Inc.*,
  541 F.2d 832 (9th Cir. 1976) .................................................................................................... 8

*Mora v. Harley-Davidson Credit Corp.*,
  2014 WL 29743 (E.D. Cal. Jan. 3, 2014) .............................................................................. 11

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .................................................................................................................... 5

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................ 8

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .............................................................................................. 6, 10

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) .................................................................................................................. 7

# TABLE OF AUTHORITIES
*(cont'd)*

*Page(s)*

*Phillips Petrol. Co. v. Shutts*,
   472 U.S. 797 (1985) ...................................................................................................... 5

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................ 9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................... 1, 6

*Thieriot v. Celtic Ins. Co.*,
   2011 WL 1522385 (N.D. Cal. April 21, 2011) ........................................................... 10

*Tijero v. Aaron Bros., Inc.*,
   2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) .............................................................. 9

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .......................................................................................... 6

**Statutes, Rules, and Regulations**

Cal. Bus. & Prof. Code, § 17200, *et seq.* ........................................................................... 2

Cal. Lab. Code
   § 221 ............................................................................................................................. 2
   § 223 ............................................................................................................................. 2
   § 226 ............................................................................................................................. 2
   § 226.7 .......................................................................................................................... 2
   § 510 ............................................................................................................................. 2
   § 512 ............................................................................................................................. 2
   § 1194 ........................................................................................................................... 2
   § 1197 ........................................................................................................................... 2
   § 1197.1 ........................................................................................................................ 2
   § 1198 ........................................................................................................................... 2
   § 2698, *et seq.* ............................................................................................................. 2

Fed. R. of Civ. P.
   R 23 ..................................................................................................................... *passim*
   R 23(a) ..................................................................................................................... 1, 11
   R 23(b)(3) ................................................................................................................ 1, 11
   R 23(e) .......................................................................................................................... 6

IWC Wage Order 4 ............................................................................................................ 2

29 U.S.C.
   § 201, *et seq.* ....................................................................................................... *passim*
   § 216(b) ......................................................................................................................... 1

**Other Authorities**

*Manual for Complex Litigation, Fourth* § 21.6 (2004) ..................................................... 6

*Manual for Complex Litigation, Third* § 30.42 (1995) ..................................................... 9

**NOTICE OF JOINT MOTION AND JOINT MOTION**

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on Thursday, September 6, 2018, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 4 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, before the Honorable Vince Chhabria, Named Plaintiff Debra Wolf and opt-in Plaintiff Natty Medrano ("Plaintiffs"), on behalf of themselves and all those similarly situated ("Class Members"), and Defendant The Permanente Medical Group, Inc. ("TPMG") (collectively, the "Parties"), hereby jointly do and will move the Court to grant, pursuant to Federal Rule of Civil Procedure 23, final approval of the Parties' Collective/Class Action Settlement Agreement (the "Settlement") (ECF 36-1), and entry of judgment in accordance with the Settlement; and (2) to grant, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), final class certification and collective action designation of the settlement Class certified in the Preliminary Approval Order (ECF 41.)

Plaintiffs and TPMG make this motion on the grounds that the Settlement was reached after arms-length negotiations by counsel for Plaintiffs and the Class and counsel for TPMG is fair and reasonable, has drawn a favorable response from the Class, and should be given final approval by the Court for all the reasons set forth in the following memorandum in support of the motion.

The motion is based on this notice of motion and motion; the memorandum in support of the motion; the Declaration of Kevin J. Stoops filed in support of this motion; the Declaration of Jeffrey D. Wohl filed in support of this motion; the parties' Notice of Joint Motion and Joint Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing (ECF 36) (as well as the corresponding Memorandum in Support of Joint Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of Class, Approval of Class Notice, and Setting of Final Approval Hearing (ECF 36); and the accompanying Declaration of Kevin Stoops (ECF 36-1)); the parties' Settlement Agreement (ECF 36-2); the Court's Order Granting Preliminary Approval of the Parties' Settlement (ECF. 41); Plaintiffs' Motion for Attorneys' Fees, Litigation/Settlement Administration Expenses, and Class Representative Service Awards, and supporting papers (ECF 44); all matters of which the Court

may take notice; and any oral and documentary evidence presented at the hearing on the motion.

Dated: August 1, 2018.

Respectfully Submitted,

*/s/ Kevin J. Stoops*

Kevin J. Stoops (admitted *pro hac vice*)
kstoops@sommerspc.com
Jason J. Thompson (admitted *pro hac vice*)
jthompson@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

*Attorneys for Plaintiffs and
Proposed Class and Collective Members*

*/s/ Jeffrey D. Wohl*

Jeffrey D. Wohl (Cal. State Bar No. 096838)
jeffwohl@paulhastings.com
Caitlin M. Wang (Cal. State Bar No. 311901)
caitlinmarianwang@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

*Attorneys for Defendant
The Permanente Medical Group, Inc.*

**MEMORANDUM IN SUPPORT OF JOINT MOTION**

**I.   INTRODUCTION**

Named Plaintiff Debra Wolf and opt-in Plaintiff Natty Medrano ("Plaintiffs"), and Defendant The Permanente Medical Group, Inc. ("TPMG"), request that this Court grant final approval of the Settlement. The Settlement resolves litigation over Plaintiffs' and Class Members' claims that TPMG violated the Fair Labor Standards Act ("FLSA") and California wage-and-hour laws by failing to pay Plaintiffs and the Class Members for alleged pre- and post-shift work performed off the clock. The Settlement is the product of arms-length negotiations by experienced counsel, after significant investigation, and recognition of the strengths and weaknesses of each side's positions.

The Settlement, in the amount of $2,950,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." The Class has responded overwhelmingly favorably to the settlement. *See* Declaration of Kevin Stoops ("Stoops Decl."), ¶31 and Declaration of Jarrod Salinas ("Salinas Decl."), ¶9-10.) The objection and exclusion period closed on July 23, 2018. No objections were made to the Settlement. And, only nine opt-out requests have been received to date out of the 1,701 Class Members who received notice of the Settlement (or 0.52%). *Id*.

Furthermore, Class Counsel (who are among the most highly experienced attorneys in the country handling complex wage-and-hour class and collective actions) have conducted sufficient investigation to enable them to adequately evaluate the claims and defenses in the action. Stoops Decl., ¶¶ 19-27. Lastly, the Settlement is in line with the strength and recoverability of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). Indeed, the Settlement is commensurate with a prior settlement previously approved by the Court involving the same claims as those presented here. *See Brown et al., v. The Permanente Medical Group, Inc.*, U.S.D.C., N.D. Cal., No. 3:16-cv-05272-VC (ECF 107) (Order Granting Final Approval of Class Action Settlement as Modified).

In connection with requesting final settlement approval, Plaintiffs also request that the Court confirm as final: (1) the certification of the Class certified in its Preliminary Approval Order; (2) the designation of the case as a collective action under the FLSA as preliminarily designated in that Order;

and (3) the appointment of Plaintiffs as the Class Representatives and of Plaintiffs' counsel as Class counsel as initially provided in that Order ("Class Counsel".)

## II. BACKGROUND

### A. The Litigation

This case is a Fair Labor Standards Act ("FLSA") collective action and Rule 23 California state law class action for unpaid wages related to off-the-clock work allegedly performed by Plaintiffs and other Teleservice Representatives ("TSRs") who worked remotely and in brick-and-mortar call center operations maintained by TPMG in San Jose, Sacramento and Vallejo, California. Specifically, Plaintiffs alleged that TPMG failed to pay its TSRs for off-the-clock time spent: (1) at the beginning of each shift in connection with starting-up and logging into the computers, systems and programs utilized during their shift; (2) during their meal period in connection with logging back into TPMG's computers and timekeeping systems; and (3) at the end of each shift in connection with shutting-down and logging out of said computers, applications, systems and phone systems. Plaintiffs' Complaint asserted the following claims:

Count I: Violation of FLSA, 29 U.S.C. § 201, *et seq.* Failure to Pay Overtime Wages (Collective Action under the Fair Labor Standards Act)

Count II: Violation of California Labor Code §§ 223, 510, 1194, 1197.1, 1198 and IWC Wage Order 4 – Failure to Pay Overtime Wages (Rule 23 Class Action under California State Law)

Count III: Violation of California Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order 4 – Failure to Pay Minimum Wages and Regular Wages for All Hours Worked (Rule 23 Class Action under California State Law)

Count IV: Violation of California Labor Code §§ 221 and 223 – Unlawful Deductions (Rule 23 Class Action under California State Law)

Count V: Violation of California Labor Code § 226.7, 512 and IWC Wage Order 4 – Failure to Provide Meal Breaks (Rule 23 Class Action under California State Law)

Count VI: Violation of California Labor Code § 226 – Failure to Provide Accurate Wage Statements (Rule 23 Class Action under California State Law)

Count VII: Violation of Business and Professions Code, § 17200, *et seq.* (Rule 23 Class Action under California State Law)

Count VIII: Private Attorney General Act ("PAGA") – Violation of California Labor Code § 2698, *et seq.*

(ECF 1.)

Plaintiffs filed this case on September 14, 2017. Shortly thereafter, and in light of the fact the same or similar facts and claims were presented in *Brown et al., v. The Permanente Medical Group, Inc.,*, U.S.D.C., N.D. Cal., No. 3:16-cv-05272-VC, which counsel for Plaintiffs and TPMG recently had settled, counsel for the Parties began discussing the possibility of entering settlement negotiations and attending mediation with esteemed mediator David Rotman. Plaintiffs agreed to engage in such discussions and further agreed to hold off on filing a Motion for FLSA Conditional Collective Action Certification pending the outcome of this mediation.

To prepare for mediation the parties engaged in a voluntary exchange of information. Among other things, TPMG has provided Plaintiffs with: detailed time and pay records for a sample of remote and brick-and-mortar TSR employees; compensation policies; computer and software program guidelines and training materials; badge swipe records; and information related to technical disconnection issues for a sample of remote TSRs. Most importantly, the parties engaged in a voluntary exchange of information and data concerning the scope of the Class in an effort to define the appropriate Class Members, the number of affected workweeks, and to gain an understanding of the primary damage analytics (among others: average rates of pay; number of weeks worked; number of weeks over/under 40 hours; number of shifts over/under 8 hours) that apply to the Class.

On February 14, 2018 the Parties attended an all-day mediation overseen by Mr. Rotman. The mediation resulted in settlement in principle. Over the next several weeks, the parties negotiated the details of the settlement agreement and exhibits.

### B. Preliminary Approval of the Settlement

On May 9, 2018, this Court granted preliminary approval of the Settlement, certified the Class, ordered that the Class be sent notice of the Settlement, and set a schedule for final approval. (ECF 41.) The Court determined that the Settlement "falls within the range of possible approval as fair, adequate, and reasonable," as it "appears to be the product of arms-length and informed negotiations" between the parties, and appears "to treat all Class Members fairly." (*Id.*, ¶ 2.)

### C. The Settlement Class

As part of the Settlement and the Court's Preliminary Approval Order, the following settlement

class was certified:

> All current and former hourly Teleservice Representatives who work or have worked for TPMG at one or more of its call centers located in Sacramento, San Jose or Vallejo, California, at any time from September 14, 2013, through the date on which the Court grants preliminary approval of the Settlement, excluding those individuals who already have resolved the claims asserted in the Action, whether by settlement or adjudication.

(ECF 41, ¶ 4.)

### D. The Settlement

The Settlement creates a non-reversionary common fund of $2,950,000. (ECF 36-1, Settlement Agreement at p. 4.) After deducting the Class Representative Service Awards, Class Counsel's Attorneys' Fees and Litigation Expenses, the costs of settlement administration, and the payment to the LWDA, the remainder of the Settlement will be distributed to the Class Members who have not opted out of the Settlement. (*Id.*) Funds from uncashed checks will be paid to the State of California Unclaimed Wages Fund. (*Id.,* pp. 15-16.)

In exchange for their settlement share, participating Class Members will release TPMG from claims arising under California state law and the FLSA described in the Settlement Agreement. (*Id.,* pp.16-17.) The scope of these releases was fully described in the Court-approved Notice. (ECF 36-1.)

### E. Notice Process

The procedures for giving notice to the Class Members, as set forth in the Settlement and ordered in the Preliminary Approval Order, have been properly followed. (Stoops Decl., ¶¶ 28-30.) The Court directed that the proposed Class Notice and exclusion forms be sent to Class Members, in the manner specified by the Settlement, and by e-mail where possible. (ECF 41.)

The Parties implemented the instructions of the Preliminary Approval Order in this regard. On or about May 15, 2018, TPMG provided the settlement administrator, Simpluris, Inc. ("Settlement Administrator"), with a list of each Class Member's last known contact information and information adequate to calculate Class Members' award allocations, including the number of weeks during which the Class Member worked, the hours they worked, and their rate of pay. (Wohl Decl., ¶ 4.) On June 8, 2018, the Settlement Administrator sent the Class Notice and exclusion forms to each of the 1,701 Class Members. (Salinas Decl., ¶ 7.)

The Notice and the exclusion forms contained detailed information about the lawsuit, including

1  the total amount of the settlement, the method by which the settlement funds would be allocated among
2  the Class Members, and procedures for opting-out of or objecting to the settlement. (*See* ECF 36-1,
3  Class Notice.) The Notice also provided contact information for Class Counsel and the Settlement
4  Administrator. *Id.*

5  The Settlement Administrator followed accepted best practices to ensure that the Notice reached
6  as many Class Members as feasible. (Salinas Decl. ¶6-7.) The Settlement Administrator disseminated
7  the Court-approved Notice to all Class Members by first class mail, using the National Change of
8  Address ("NCOA") database to verify the accuracy of all addresses prior to sending the Notices. (*Id.*,
9  ¶ 8.) The Settlement Administrator also ran traces on the addresses of any returned Notices to again
10 search for an updated address. (*Id*.) The Settlement Administrator also maintained a toll-free telephone
11 number and a website to provide Class Members with additional information. (*Id.*, ¶ 4.) Finally, the
12 Settlement Administrator e-mailed the Notice to all Class Members for whom TPMG maintained e-mail
13 addresses. (*Id.*, ¶ 3.)

14 **III.    ARGUMENT**

15     **A.    The Best Practicable Notice of Settlement Has Been Provided to the Class.**

16 The mailing/e-mailing of the Class Notice and exclusion forms to Class Members, and the
17 general administration of the notice process as described above, meets the requirements for the "best
18 practicable" notice in this case as necessary to protect the due process rights of Class Members. (ECF
19 41, ¶ 3; *see also Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best
20 practicable" notice with description of the litigation and explanation of opt-out rights satisfies due
21 process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to
22 class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank &
23 Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated,
24 under all the circumstances, to apprise interested Parties of the pendency of the action and afford them
25 an opportunity to present their objections".) Therefore, the Court may proceed to determine the fairness
26 and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent
27 Class Members have been given the opportunity to participate fully in the opt-out, comment, and
28 approval process.

### B.     Final Approval Standards Under Rule 23 and the FLSA.

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class action litigation is concerned".) On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton,* 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).)

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004) ("*Manual*"), § 21.6 at 309.

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the state of the proceedings; the experience and views of counsel [...] and the reaction of the class to the proposed settlement." *Class Plaintiffs*, 955 F.2d at 1291; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v.*

*Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.")

### C. The Settlement Is Presumptively Fair Because of No Objections by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arms-Length Negotiations.

The Court should begin its analysis with a presumption that the Settlement is fair and should be approved, due to (1) the relatively few objections to the Settlement by the Class Members, (2) the meaningful discovery conducted, (3) Class Counsel's significant experience in this kind of litigation, and (4) the arms-length negotiations before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arms-length negotiations conducted by competent counsel after appropriate discovery are *prima-facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.".)  These factors are well satisfied here.

*First*, no objections were made to the Settlement and the objection period closed July 23, 2018.

*Second*, only nine Class Members excluded themselves from the Settlement.  These Class Members amount to 0.52% of the 1,701 Class Members who were provided Notice.

*Third*, as discussed in more detail below, the Parties engaged in substantial discovery and a significant exchange of relevant information and data in advance of the Parties' mediation.  As a result of these efforts, Class Counsel had sufficient information to evaluate the strengths and weaknesses of the Class claims and defenses, whether to pursue litigation or settle, and the appropriate settlement value for the claims at issue.

*Fourth*, Class Counsel are highly experienced in wage-and-hour class action litigation.

*Finally*, the Settlement was reached only after arms-length, good-faith negotiations under the supervision of an experienced mediator, David Rotman.  The case has been zealously litigated by both sides.  There are no indicia of collusion.

For all these reasons, a presumption is appropriate that the class relief in the Settlement is fair.

///

### 1. No Objections and Only Nine Requests for Exclusion

As of the date the objection period closed, July 23, 2018, no objections were made despite the Notice going to 1,701 Class Members. Even in cases where objections are made it is recognized that a small number of objections indicates a favorable class reaction. *See Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (holding that "in the absence of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).

Moreover, only nine Class Members—0.52%—opted out of the Settlement. This overwhelmingly positive reaction of the class strongly supports final approval of the settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (granting final approval where 16 of 329 class members opted out, explaining that where exclusions and opt-outs are low, there is a presumption of a favorable class reaction.)

### 2. The Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.

Class Counsel have engaged in extensive investigation of the claims in this case. (Stoops Decl., ¶¶ 13-27.) Class Counsel reviewed thousands of pages of documents produced by TPMG; interviewed Class Members and potential opt-in plaintiffs regarding their job duties, hours worked, and other relevant information; and, along with Hemming Morse, LLP (certified public accountants) analyzed detailed, individualized class member payroll and time record data to prepare a comprehensive damage analysis. (*Id.*).

Finally, the parties spent countless hours (on both legal research and damage analysis) preparing for and taking part in mediation.

In summary, the Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (8th Cir. 2000) (emphasizing that the touch stone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery.)

///

///

### 3. The Recommendations of Experienced Counsel Favor Approval of the Settlement.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).)

Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiffs' Counsel and TPMG's counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. (Stoops Decl., ¶ 8; Exh. 1, Wohl Decl., ¶ 3.) The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 4. The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator.

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, 2013 WL 6700102, at *7 (N.D. Cal. Dec. 19, 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. 98 Civ. 1646, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* § 30.42 (1995).)

The parties engaged in lengthy day-long mediation followed by several weeks of direct negotiations. (Stoops Decl., ¶ 26.) Before the mediation, the Parties submitted extensive mediation briefing, including detailed data analyses and assessments, and substantial evidence. (*Id.*, ¶¶ 13-27.)

///

///

**D.    The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.**

**1.    The Value of the Settlement Favors Final Approval.**

The value of the Settlement—$2,950,000—is commensurate with the settlement approved by the Court in *Brown et al., v. The Permanente Medical Group, Inc.*,, U.S.D.C., N.D. Cal., No. 3:16-cv-05272-VC (ECF 107) (Order Granting Final Approval of Class Action Settlement as Modified), involving the same or similar facts and claims, and compares favorably to other similar class-action settlements. This is especially true in light of the defenses raised by TPMG including defenses relating to: the *de minimis* doctrine; preclusion of California state law claims under the collective bargaining agreement; and the propriety of class and collective certification. (Stoops Decl., ¶¶ 20-26.) Plaintiffs faced the very real possibility that if they proceeded to trial, they might obtain little if any recovery for the Class.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citation omitted.) Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Therefore, the $2,950,000 settlement amount is well within the range of reasonableness.

**2.    Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.**

When a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court

approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 at *4 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, litigation entails expense.".)

Similarly here, TPMG continues to contest liability and the propriety of collective and class certification. TPMG's absolute denial of liability, paired with its diligent efforts to prevent collective and class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement (Stoops Decl., ¶¶ 20-26.)

Moreover, this Rule 23 California class and FLSA collective action involves intricate legal and factual questions under federal and state law. Litigating these complex claims would require substantial additional discovery and further pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. (*Id.*) Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues. (*Id.*) Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials. (*Id.*) As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay. (*Id.*) In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Such a result benefits the Parties and the court system.

E.   **The Court Should Grant Final Class Certification and Collective Action Designation.**

The Court previously certified the Class for Settlement purposes only pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and as a FLSA collective action. (ECF 98.) The Court ruled that, for purposes of the settlement, the Class meets the Rule 23 requirements as well as the FLSA collective action requirements. (*Id.*) The Court also appointed the named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel. (*Id.*) For these reasons, and the reasons set forth in the Parties' Joint Motion for Preliminary Approval, the Parties respectfully submit that the

Court should grant final certification and collective action designation for purposes of settlement of this matter and should confirm the appointment of the class representatives and class counsel.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs and Defendant, by and through their counsel, respectfully request that the Court (1) grant final approval of the Settlement, and (2) grant final class certification and collective action designation of the Settlement.

Dated:  August 1, 2018.                    Respectfully Submitted,

*/s/ Kevin J. Stoops*

Kevin J. Stoops (admitted *pro hac vice*)
kstoops@sommerspc.com
Jason J. Thompson (admitted *pro hac vice*)
jthompson@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone:  (248) 355-0300
Facsimile:  (248) 436-8453

Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

*Attorneys for Plaintiffs and
Proposed Class and Collective Members*

*/s/ Jeffrey D. Wohl*

Jeffrey D. Wohl (Cal. State Bar No. 096838)
jeffwohl@paulhastings.com
Caitlin M. Wang (Cal. State Bar No. 311901)
caitlinmarianwang@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

*Attorneys for Defendant
The Permanente Medical Group, Inc.*